UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| JAMES K. W., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-864-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff James K. W. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act, and his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 14).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 10. Plaintiff also filed a reply. *See* ECF No. 12. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 8) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 10) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed an application for DIB on February 26, 2019. Transcript ("Tr.") 15, 166-72. He also filed an application for SSI on July 2, 2020. Tr. 15, 181-90. In both applications, Plaintiff alleged disability beginning February 14, 2015 (the disability onset date), due to herniated discs, sciatica, bulging discs, and high blood pressure. Tr. 220. The claims were

denied initially on July 3, 2019, and again on reconsideration on November 5, 2019, after which Plaintiff requested an administrative hearing. Tr. 15. On October 15, 2020, Administrative Law Judge Andrew J. Soltes, Jr. ("the ALJ") conducted a telephonic hearing.[1] Tr. 15, 29-72. Plaintiff appeared and testified at the hearing and was represented by Katheryn Eastman, an attorney. Tr. 15, 33. Helene J. Feldman, an impartial vocational expert, also appeared and testified. *Id*.

The ALJ issued an unfavorable decision on December 1, 2020, finding that Plaintiff was not disabled. Tr. 15-23. On June 2, 2021, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's December 1, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 15.

## II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his December 1, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2020.

2. The claimant has not engaged in substantial gainful activity since February 14, 2015, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: cervical and lumbar degenerative disc disease/herniated discs status post surgery, obesity, and asthma (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[2] but requires the ability to alternate between sitting and standing at will while remaining on task during the sit/stand period, can frequently reach in all directions except overhead, can occasionally reach overhead, stoop, crouch, and climb ramps/stairs, cannot kneel, crawl, climb ladders/ropes/scaffolds, or work from unprotected heights, and must avoid temperature extremes and concentrated exposure to dust, fumes, gases, and other pulmonary irritants.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 13, 1982 and was 32 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

---

[2] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally, and other sedentary criteria are met.

8.  The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 14, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 15-23.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on February 26, 2019, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 23. The ALJ also determined that based on the application for supplemental security income protectively filed on July 2, 2020, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## <u>ANALYSIS</u>

Plaintiff asserts three points of error. Plaintiff first argues that the ALJ failed to consider the October 2018 opinion of treating chiropractor, John Ward, D.C. ("Dr. Ward"). *See* ECF No. 8-1 at 9-13. Second, Plaintiff argues that the ALJ failed to properly evaluate whether Plaintiff's thoracic degenerative disc disease met or equaled any part of Listing 1.04. *See id*. at 13-16. Finally, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's subjective complaints. *See* id. at 16-19. Accordingly, Plaintiff argues that the ALJ's finding that Plaintiff was not disabled was not supported by substantial evidence. *See id*. at 8-19.

In response, the Commissioner argues that the ALJ's RFC finding was supported by substantial evidence, including multiple medical opinions. *See* ECF No. 10-1 at 5-16. While the Commissioner concedes that the ALJ did not discuss Dr. Ward's opinion, the Commissioner

argues that any error was harmless because Dr. Ward's opinion was consistent with the RFC finding for sedentary work. *See id*. at 8-12. Next, the Commissioner argues that the ALJ's step three finding that Plaintiff's impairments did not meet or medically equal the requirements of Listing 1.04, or any other Listing, was supported by substantial evidence, and Plaintiff has failed to show otherwise, as was his burden. *See id.* at 16-19. With respect to Plaintiff's third point, the Commissioner argues that the ALJ properly considered Plaintiff's subjective complaints in accordance with the regulatory framework, and substantial evidence supports the ALJ's conclusions. *See id*. at 19-24.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ thoroughly considered the evidence of record, including the objective medical records and the opinions of multiple medical sources, and the ALJ's finding that Plaintiff was not disabled was supported by substantial evidence. Any error in the ALJ's failure to discuss Dr. Ward's opinion was, at most, harmless. Furthermore, substantial evidence supports the ALJ's finding that Plaintiff did not meet or medically equal a Listing and his finding that Plaintiff's subjective complaints were not entirely consistent with the other evidence. Accordingly, the Court finds no error.

Following a motor vehicle accident on February 14, 2015, Plaintiff treated with orthopedic surgeon Zair Fishkin, M.D. ("Dr. Fishkin"), and other providers at Pinnacle Orthopedic & Spine

Specialists ("Pinnacle Orthopedic"). Tr. 523-54. On July 21, 2015, Dr. Fishkin performed a left L5-S1 laminectomy, partial facetectomy, and discectomy for decompression of the left L5 and S1 nerves. Tr. 543. On December 1, 2015, Plaintiff reported he was "pleased" with his recovery and "eager to return to work." Dr. Fishkin released Plaintiff to return to work with light duty restrictions that included lifting no greater than twenty pounds, and no repetitive flexion, extension or rotation of the lumbar spine. Tr. 529.

By January 2016, Plaintiff was doing well after his surgery. Tr. 523. He denied low back or left lower extremity discomfort, tingling, or numbness. *Id*. However, he complained of continued intermittent neck discomfort that radiated to his left shoulder. *Id*. Plaintiff was taking Ibuprofen as needed for discomfort and continued home exercises that "he fe[lt] just keep him stable." *Id*.

On June 28, 2018, Plaintiff was treated in the Emergency Department ("ED") at Sisters of Charity Hospital after being rear ended in a motor vehicle accident. Tr. 573. Plaintiff complained of thoracic pain radiating to the right side. Tr. 570. After an x-ray of the thoracic spine, Plaintiff was prescribed medication and discharged home. Tr. 576.

Plaintiff received chiropractic care from Dr. Ward from 2016 to 2019. *See* Tr. 319-501, 1173-1685. On July 2, 2018, shortly after Plaintiff's second motor vehicle accident, Dr. Ward performed a baseline physical performance test, which showed reduced range of motion in all cervical and lumbar vectors, ranging from 13% to 52% of normal. Tr. 329. Follow-up physical performance testing in December 2018 and February 2019 indicated significant improvement in most vectors of cervical and lumbar range of motion. Tr. 415, 497.

On October 15, 2018, Dr. Ward completed a form indicating that Plaintiff was "moderately limited" in walking, standing, sitting, lifting, carrying, pushing, pulling, bending, seeing, hearing,

speaking, using his hands, and climbing. Tr. 1442-43. Dr. Ward did not complete the section of the form asking how long Plaintiff's limitations were expected to last. *See* Tr. 1443.

On November 19, 2018, Plaintiff was seen by nurse practitioner Krystle Collins, FNP-BC ("Ms. Collins"), at Pinnacle Orthopedic, complaining of intermittent neck pain and constant low back pain following his second accident. Tr. 476-81. Plaintiff rated the severity of his neck pain as 5/10 and his neck pain as 7/10. Tr. 477. He also reported numbness and tingling in the two smallest fingers on the left hand and numbness and paresthesia in the left posterior calf, as well as occasional associated headaches. *Id*. Plaintiff reported that he was currently receiving chiropractic treatment three times per week with Dr. Ward. *Id*.

On physical examination, Ms. Collins noted that Plaintiff demonstrated normal gait and stance; he was able to stand from a seating position without difficulty; and he used no assistive devices. Tr. 479. Ms. Collins also noted mild cervical and lumbar paravertebral muscle rigidity; reduced range of motion in the cervical and lumbar spine; 5/5 strength in the upper extremities; and positive straight leg raise testing. *Id*. Ms. Collins assessed cervical and lumbar disc herniation and discussed various treatment options, including continuing with chiropractic care and other conservative treatment options, as well as interventional pain management. Tr. 480. Plaintiff indicated that he wanted a surgical consultation with Dr. Fishkin before proceeding with any injections. *Id*.

On January 28, 2019, Plaintiff was seen by Dr. Fishkin for further evaluation. Tr. 466-70. Dr. Fishkin reviewed MRI studies of the thoracic and cervical spine taken in August 2018, and MRI studies of cervical and lumbar spine taken in March 2015. Tr. 467-68. Dr. Fishkin assessed L5-S1 laminectomy; recurrent L5-S1 disc herniation; thoracic degenerative disc disease with spondylosis; and cervical HNP with stenosis. Tr. 469. He recommended continuing with

conservative and nonoperative care, including chiropractic adjustments and pursuing physical therapy if Plaintiff reached a plateau with chiropractic adjustments. *Id*.

On February 14, 2019, Plaintiff presented to Dr. Fishkin with recurrent left-sided L5-S1 disc herniation, lumbar radiculopathy, and back pain. Tr. 474. Dr. Fishkin noted that MRI studies from November 2018 demonstrated loss of disc space height at L5-S1. *Id*. He discussed treatment options with Plaintiff, including living with the leg pain or surgical options. *Id*. Dr. Fishkin noted that additional laminectomy/decompression would not adequately restore the foraminal height, and his leg pain would remain persistent. *Id*. After discussion, Plaintiff elected to proceed with L5-S1 anterior lumbar discectomy and interbody fusion ("ALIF"). *Id*. Dr. Fishkin performed L5-S1 ALIF surgery on May 14, 2019. Tr. 585.

Plaintiff had a post-op follow-up visit with Dr. Fishkin on May 23, 2019. Tr. 663-66. Plaintiff reported "immediate improvement of left leg pain." Tr. 663. Dr. Fishkin noted that Plaintiff's back was "still understandably sore." *Id*. On physical examination, Dr. Fishkin noted that Plaintiff walked without an assistive device, and his incision was healing. Tr. 665. Dr. Fishkin encouraged Plaintiff to continue with a lumbar support orthosis and recommended no lifting greater than five pounds or activity requiring repetitive lumbar bending and twisting; he also recommended another 4-6 weeks of rest before increasing activity. Tr. 666.

On June 20, 2019, Nikita Dave, M.D. ("Dr. Dave"), conducted an internal medicine consultative examination. Tr. 646. Plaintiff reported that he had been in two motor vehicle accidents, one in 2015 and one in 2018. *Id*. The first accident caused chronic neck and low back pain, while the second accident aggravated the low back pain. *Id*. Plaintiff had lumbar spine surgery in 2016, and due to constant left lower extremity pain over the last eight months, he had a

9

second surgery about one month prior to the examination. *Id*. Plaintiff reported he was presently under surgical restrictions for no bending, lifting more than five pounds, or twisting. *Id*.

On physical examination, Dr. Dave noted that Plaintiff demonstrated full strength in the upper and lower extremities; showed full range of motion in the cervical spine (lumbar range of motion was not tested due to recency of surgery); stood with a normal stance; walked with a normal gait without the use of an assistive device; squatted halfway to the ground; and rose from a chair without difficulty. Tr. 647. Dr. Dave diagnosed: hypertension, stable with medications; lumbar spine surgeries and motor vehicle accidents; low back pain axial; and neck pain, right myofascial. Tr. 648. Dr. Dave opined that Plaintiff was mildly to moderately limited in his ability to perform heavy lifting, carrying, pushing, and pulling, and also may have "mild need to avoid smoke, dust, inhalants, chemicals, extremes of temperature and humidity given past history of [asthma]." *Id*.

On July 11, 2019, Plaintiff had a follow-up post-op visit with physician assistant James Hurd, PA-C ("Mr. Hurd"), at Pinnacle Orthopedic.  Tr. 658-61. Mr. Hurd noted that Plaintiff continued to be pleased with the surgical results, although he complained of lingering back pain which he "describe[d] as 'not bad' intolerable overall." Tr. 658. Plaintiff denied radiation, numbness, or tingling to his lower extremities. *Id*. Mr. Hurd encouraged Plaintiff to "avoid repetitive bending or twisting with his waist and other aggravating activities." Tr. 661.

On October 21, 2019, Plaintiff underwent an orthopedic consultative examination by Hongbiao Liu, M.D. ("Dr. Liu"). Tr. 655. Plaintiff again reported neck and low back pain limiting his ability to lift, walk for prolonged periods, and remain in a static position. *Id*. On physical examination, Dr. Liu noted decreased range of motion in the cervical and lumbar spine and positive straight leg raise testing at 25 degrees sitting and supine. Tr. 656. Dr. Liu also noted that Plaintiff presented with a back brace, and he opined that the brace was medical necessary to limit pain. *Id*.

Dr. Liu also observed that Plaintiff stood with a normal station; walked with a normal gait without using an assistive device; performed a full squat; rose from a chair without difficulty; and demonstrated full strength in the upper and lower extremities, with no evidence of atrophy or sensory/reflex abnormalities. Tr. 656-57. Dr. Liu diagnosed chronic neck and low back pain secondary to motor vehicle accident, status post back surgery; history of high blood pressure; and obesity. Tr. 657. Dr. Liu opined that Plaintiff had mild to moderate limitation for prolonged walking, bending, kneeling, squatting, lifting, carrying, overhead reaching, prolonged sitting/standing, and stair climbing. *Id*.

As noted above, Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence. *See generally* ECF No. 8-1. A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between

properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v.*

*Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed his DIB claim on February 26, 2019, and his SSI claim on July 2, 2020, and therefore, the 2017 regulations are applicable to his claims.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency.  *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not

required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the

Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Plaintiff first contends that remand is warranted because the ALJ failed to consider the October 2018 opinion from Dr. Ward. *See* ECF No. 8-1 at 9-13. As noted above, Dr. Ward opined that Plaintiff was "moderately limited" in walking, standing, sitting, lifting, carrying, pushing, pulling, bending, seeing, hearing, speaking, using his hands, and climbing. Tr. 1443. While the ALJ did not consider this opinion, any error is harmless because substantial evidence supports the ALJ's RFC finding for sedentary work. Tr. 18. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ((remand is unnecessary where "application of the correct legal principles to the record could lead [only to the same] conclusion"). Dr. Ward's opinion is also consistent with the limitations in the ALJ's RFC finding. *Compare* Tr. 18 *with* Tr. 1443. *See Smith v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 270, 282 (W.D.N.Y. 2018) (ALJ's failure to discuss evidence was harmless error where the evidence did not contain any information inconsistent with the assess RFC, the record contained other sources of opinion evidence, and the opinion in question was not entitled to special weight); *Gemmell v. Comm'r of Soc. Sec.*, 2017 WL 3328237, at *5 (N.D.N.Y. Aug. 2, 2017) ("[F]ailure to consider or weigh an opinion may be harmless error where consideration of that opinion would not have changed the outcome.") (collecting cases).

First, the ALJ found Plaintiff capable of a reduced range of sedentary work, the least rigorous category of work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b). The ALJ also found Plaintiff could frequently reach in all directions except overhead, could occasionally reach overhead, could occasionally stoop, crouch, and climb ramps/stairs, and could not kneel, crawl, climb ladders/ropes/scaffolds, or work from unprotected heights. Tr. 18. The ALJ's RFC finding further requires that Plaintiff be allowed to alternate between sitting and standing, at will, thus

accommodating any difficulties with prolonged sitting or standing. *Id*. Thus, Dr. Ward's opinion that Plaintiff had moderate limitations in physical functioning is not inconsistent with this very restrictive RFC finding.

Dr. Ward's opinion was also provided on a brief check-box form without any explanation or supporting narrative. Tr. 1443. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (explaining that in evaluating medical opinions, the more a medical source presents relevant objective evidence and supporting explanations to support his or her opinion, the more persuasive that opinion will be found). As this Court has noted previously, such check-box forms are of limited evidentiary value. *See, e.g., Koerber v. Comm'r of Soc. Sec.*, No. 6:19-CV-1070-DB, 2020 WL 1915294, at *1 (W.D.N.Y. Apr. 20, 2020) (citing *Augustine v. Comm'r of Soc. Sec.*, No. 6:15-CV-06145-EAW, 2016 WL 5462836, at *1 (W.D.N.Y. Sept. 28, 2016); *Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004) ("[t]he standardized form . . . is only marginally useful for purposes of creating a meaningful and reviewable factual record").

Moreover, while the form completed by Dr. Ward did not define the term "moderately" (*see* Tr. 1442-43), courts in this Circuit have repeatedly recognized that moderate limitations in sitting are not necessarily inconsistent with the ability to perform the six hours of sitting needed for sedentary work. *See Lisa P. v. Comm'r of Soc. Sec.*, No. 19-cv-1155, 2021 WL 826715, at *3-4 (W.D.N.Y. Mar. 4, 2021) (holding that "a moderate limitation in the ability to sit does not necessarily preclude a finding that the claimant can meet the sitting demands of sedentary work"); *Hill v. Berryhill*, 17-cv-6532, 2019 WL 144920, at *6 (W.D.N.Y. Jan. 9, 2019) (holding that moderate limitations in prolonged sitting are not inconsistent with sedentary work); *see also Harrington v. Colvin*, No. 14-CV-6044, 2015 WL 790756 at *13, 14 W.D.N.Y. Feb. 25, 2015) (moderate limitations in sitting, standing and walking not inconsistent with sitting, standing, and

walking six hours a day) (collecting cases).; *Halloran*, 362 F.3d at 33 ("The regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight."); *Poupore*, 566 F.3d at 306 (noting that a claimant's need to "get up and move around from time to time does not preclude his ability to perform sedentary work").

In addition, Dr. Ward's opinion was drafted in October 2018 (Tr. 1443), after Plaintiff's second motor vehicle accident in June 2018, and before his May 2019 lumbar spine surgery. Tr. 658. Notably, Dr. Ward declined to complete the section of the form requesting him to specify how long he believed Plaintiff's limitations were expected to last. *See* Tr. 1443. As the ALJ explained, after his July 2015 surgery, Plaintiff had been able to "return to work with minimal limitations" until his second motor vehicle accident in June 2018. Tr. 19, 677-78. The ALJ further explained that after Plaintiff underwent a second lumbar spine surgery in May 2019 (Tr. 603-14), Plaintiff reported he was pleased with the results of the surgery and his pain was "not bad." Tr. 19, 659.Thus, Dr. Ward's opinion, at most, evaluates Plaintiff's condition during the discrete period between his July 2018 motor vehicle and his May 2019 surgery. *See generally Barnhart v. Walton*, 535 U.S. 212, 219-20, 122 S.Ct.1265, 1270, 152 L.Ed.2d 330, 339-40 (2002) (a claimant's functional limitations must meet the 12-month durational requirement to establish disability). In any event, as previously noted, Dr. Ward's opinion supports the ALJ's RFC finding.

Furthermore, the ALJ's RFC is supported by other substantial evidence, including the June 2019 opinion of Dr. Dave and the October 2019 opinion of Dr. Liu. Tr. 20-21, 646-49, 655-57. Dr. Dave opined that Plaintiff may have mild to moderate limitations in his ability to perform heavy lifting, carrying, pushing, and pulling and that he may have a mild need to avoid pulmonary irritants, humidity, and temperature extremes. Tr. 648. Dr. Liu opined that Plaintiff had mild to

moderate limitations for bending, kneeling, squatting, lifting, carrying, overhead reaching, stair climbing, and prolonged walking, sitting, and standing. Tr. 657.

The ALJ's RFC is also supported by the assessments of state agency consultants, V. Baronos, M.D. ("Dr. Baronos"), who reviewed the record in June 2019, and J. Lawrence, M.D. ("Dr. Lawrence"), who reviewed the record in October 2019. Tr. 20-21, 78-79, 89-92. Dr. Baronos opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; could sit and stand and/or walk for six hours each in an eight-hour workday; could occasionally stoop and climb ladders, ropes, and scaffolds; and had no other postural, manipulative, visual, communicative, or environmental limitations. Tr. 74-75, 78-79. Dr. Lawrence opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; could sit and stand and/or walk for six hours each in an eight-hour workday, could occasionally stoop and climb ramps, stairs, ladders, ropes, and scaffolds, and had no other postural, manipulative, visual, communicative, or environmental limitations. Tr. 84-87, 89-92.

The ALJ reasonably found these four opinions persuasive, specifically noting that they were consistent with each other and with the other medical evidence of record, as well as supportive of the RFC for sedentary work. Tr. 20-21, 78-79, 89-92, 646-49, 655-57. Thus, the assessments from Drs. Dave, Liu, Baronos, and Lawrence, as well as from Dr. Ward, provide ample additional support for the ALJ's determination that Plaintiff could at least perform a range of sedentary work. *See Ramsey v. Comm' r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (upholding an RFC finding where "the ALJ occasionally deviated from consultative examiners' recommendations to *decrease* [the claimant's] RFC based on other evidence in the record") (emphasis in original)); *Threatt v. Comm'r of Soc. Sec.*, No. 19-CV-25JJM, 2020 WL 4390695, at *5 (W.D.N.Y. July 31, 2020); *see also Baker v. Berryhill*, No. 1:15-cv-00943-MAT, 2018 WL

1173782, at *2 (W.D.N.Y. Mar. 6, 2018) ("Where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand.") (internal quotation marks and citations omitted).

The ALJ also considered other evidence in addition to the opinion evidence. Tr. 19-20. As the ALJ considered, Plaintiff underwent successful lumbar spine surgery in 2015, and was able to return to work with minimal limitations until a second motor vehicle accident in June 2018. Tr. 19, 677-78. After his second accident, Plaintiff underwent a second lumbar spine surgery in May 2019. Tr. 603-14. The ALJ noted that by July 2019, Plaintiff reported that he was pleased with the results of the surgery and his pain was "not bad." Tr. 19, 659. The ALJ also considered that, while objective imaging studies taken in 2015 and 2018 confirmed the presence of degenerative disc disease, herniation, stenosis, and osteophyte formation at multiple levels of the spine (Tr. 508-09, 520, 570, 660), x-rays taken after his second surgery were interpreted as normal post-operative studies, further demonstrating improvement in Plaintiff's condition. Tr. 19, 660-61. Treatment records from Dr. Ward and Dr. Fishkin similarly showed that Plaintiff's symptoms improved with treatment. Tr. 337-42, 345-46, 354-82, 397-414, 417-442, 487-99, 698, 1001.

As the ALJ also noted, Plaintiff reported activities of daily living that demonstrated greater functioning than one would expect given his allegations of disability, including self-care, cooking, cleaning, doing laundry, and going shopping (discussed further below). Tr. 19, 647, 656. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20

C.F.R. § 416.929(c)(3)(i)). Considering the foregoing, substantial evidence supports the ALJ's RFC finding for sedentary work. Accordingly, the Court finds that any error in the ALJ's failure to evaluate Dr. Ward's October 2018 opinion is harmless.

Plaintiff's second point argues that the ALJ erred at step three by failing to articulate why Plaintiff did not meet Listing 1.04. *See* ECF No. 8-1 at 13-16. Contrary to Plaintiff's argument, however, substantial evidence supports the ALJ's finding that Plaintiff's condition did not meet or medically equal Listing 1.04, or any other Listing.

At step three, the Agency will find a claimant disabled, regardless of age, education, and work experience, if he has an impairment that meets or equals one of the Listings in the appendix. 20 C.F.R. §§ 404.1520(a) (iii), 416.920(a)(iii). The listed impairments are the kind that are permanent or expected to result in death. 20 C.F.R. §§ 404.1525(c)(iv), 416.925(c)(iv). Thus, unless specified, an impairment can only satisfy a Listing if it has lasted, or can be expected to last, for a continuous period of at least 12 months. *Id*. To meet a Listing, a claimant must have a medically determinable impairment that satisfies all of the criteria in the Listing. 20 C.F.R. §§ 404.1525(d), 416.925(d). *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("to match any Listed impairment [in 20 C.F.R. Pt. 404, Subpt. P, App. 1], claimant must satisfy all of the specified medical criteria . . .  even a severe impairment will not qualify if it meets only some, but not all, of the required medical criteria"); *Talavera*, 697 F.3d at 151; *Naegele v. Barnhart*, 433 F.Supp 2d. 319, 324 (W.D.N.Y. 2006). Furthermore, the burden is on Plaintiff to demonstrate that his condition meets a listed impairment. *See Bowen v. Yuckert*, 482 U.S. 137 146 n.5 (1987); *Beers v. Comm'r of Soc. Sec.*, 449 F.Supp.3d 96, 100 (W.D.N.Y. 2020).

Listing 1.04 provides that a claimant must show:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture),

resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

Or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04 (2020).

Here, the ALJ properly found that the medical evidence of record failed to document the sensory or motor loss with attendant symptoms required to meet Listing 1.04. Tr. 18. As the ALJ also properly found, no medical source opined that Plaintiff met or medically equaled Listing 1.04. Tr. 18. Furthermore, a review of the record reveals no evidence of motor loss, muscle weakness, sensory loss, or reflex loss in the record, and no evidence of spinal arachnoiditis. *See, e.g.*, Tr. 510, 515, 520, 567-68, 648, 656-57, 660, 665-66, 960, 1000. Nor has Plaintiff identified any such evidence. *See* ECF No. 8-1 at 13-16. Moreover, after a thorough review of the record, both Dr. Baronos and Dr. Lawrence found that Plaintiff did not meet Listing 1.04. Tr. 77, 88. In fact, Dr. Lawrence specifically discussed records of Plaintiff's condition after his June 2018 motor vehicle accident and his May 2019 surgery, including subsequent treatment records and diagnostic evidence, and nonetheless found that Plaintiff did not meet Listing 1.04. Tr. 92.

Plaintiff argues that the ALJ did not articulate his consideration of why Plaintiff did not meet Listing 1.04. *See* ECF No. 8-1 at 13-16. Contrary to Plaintiff's argument, however, the ALJ's decision reflects that he properly articulated his step three conclusion in a manner that permits the Court to establish that the ALJ's conclusions were supported by substantial evidence. *See Beers*, 2020 WL 1482329, at *3 ("[a]n ALJ's unexplained conclusion [at step three] of the analysis may

be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by substantial evidence.") (quoting *Ryan v. Astrue*, 5 F.Supp.3d 493, 507 (S.D.N.Y. 2014) (citation omitted)). Furthermore, even if an ALJ's decision lacks an express rationale for finding that a claimant does not meet a Listing, courts may still uphold the ALJ's determination if it is supported by substantial evidence. *See Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982); *see also Otts v. Comm'r of Soc. Sec.*, 249 F.App'x 887, 889 (2d Cir. 2007) ("While the ALJ might have been more specific in detailing the reasons for concluding that Otts's condition did not satisfy a listed impairment, the referenced medical evidence, together with the lack of compelling contradictory evidence from the plaintiff, permits us to affirm this part of the challenged judgment."); *Woodling v. Comm'r of Soc. Sec.*, No. 17-CV-0606, 2018 WL 4468824, at *8 (W.D.N.Y. Sept. 18, 2018) ("[A]lthough not specifically outlined in his step three analysis, it is clear from the ALJ's discussion of the medical evidence that he took into consideration evidence pertaining to Plaintiff's spinal impairment.").

In this case, the ALJ specifically referenced the "evidence discussed more fully below" to support his finding that Plaintiff did not meet Listing 1.04, Tr. 18. There, the ALJ considered, for instance, that Plaintiff walked with a normal gait and did not require the use of a cane. Tr. 19, 665, 673, 679, 684, 689, 938, 946, 963, 966, 969, 972, 975. The ALJ also noted evidence of full strength of the extremities, normal sensation, and normal reflexes. Tr. 20, 648, 656-57. As the ALJ also considered in his decision, there was no evidence of motor loss, muscle weakness, sensory loss, reflex loss, or spinal arachnoiditis. Tr. 18, 19-21. Findings on physical examination routinely showed 5/5 motor strength with intact sensation, intact reflexes, and no muscle atrophy. Tr. 510, 515, 520, 567-68, 648, 656-57, 660, 665-66, 960, 1000. Diagnostic imaging studies did not show the presence of spinal arachnoiditis. Tr. 508-09. In addition, as noted above, after reviewing

Plaintiff's available medical records, both Dr. Baronos and Dr. Lawrence found that Plaintiff did not meet Listing 1.04. Tr. 77, 88.

Although Plaintiff points to the results of a thoracic spine MRI dated August 31, 2018, showing degenerative disc disease with a right sided T9 disc herniation, this single thoracic MRI result is insufficient to demonstrate that Plaintiff met the criteria of the listing. *See* ECF No. 8-1 at 15 (citing Tr. 467).  In any event, the ALJ specifically cited this MRI in his analysis, noting that "imaging studies confirm the presence of degenerative disc disease, herniation, stenosis, and osteophyte formation at multiple levels of the spine." Tr. 19, 503. Moreover, the record indicates that this thoracic MRI study was included in the evidence reviewed by Dr. Baronos and Dr. Lawrence (Tr. 79, 91), each of whom nevertheless found that Plaintiff did not meet Listing 1.04. Tr. 77, 88. Based on the foregoing, the ALJ's finding that Plaintiff did not meet or equal Listing 1.04 was supported by substantial evidence, and Plaintiff has not met his burden to show otherwise. *See* 20 C.F.R. §§ 404.1526, 416.926.

Plaintiff's final point of error contends that the ALJ erred in evaluating Plaintiff's testimony regarding his subjective complaints of symptoms. *See* ECF No. 8-1 at 16-19. Upon review, however, the Court finds that the ALJ properly considered Plaintiff's alleged symptoms and subjective complaints but reasonably found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence of record. *See* Tr. 18-19; 20 C.F.R. § 404.1529; SSR 16-3p. Therefore, Plaintiff's argument lacks merit.

While an ALJ must take Plaintiff's claims into account, the ALJ need not accept subjective complaints without question. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Rather, the ALJ exercises discretion in weighing the consistency of Plaintiff's allegations considering the other

evidence in the record. *Id*. Great deference should be given the ALJ's judgment because she heard the witness testify and observed his demeanor. *Gernavage v. Shalala*, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995); *Serra v. Sullivan*, 762 F. Supp. 1030, 1034 (W.D.N.Y. 1991). Accordingly, review of an ALJ's subjective symptom evaluation is limited to determining whether the ALJ's reasons for discrediting the allegations are reasonable and supported by substantial evidence in the record. *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2012) (Because it is the function of the Commissioner and not the reviewing courts to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant, the Court will defer to the ALJ's determination if it is supported by substantial evidence).

First, the ALJ considered that Plaintiff's subjective complaints of disabling limitations were contradicted by the medical opinion evidence discussed in detail above. Tr. 21. Consultative examiner Dr. Dave opined that Plaintiff may have mild to moderate limitations in his ability to perform heavy lifting, carrying, pushing, and pulling. Tr. 648. Similarly, consultative examiner Dr. Liu opined that Plaintiff had mild to moderate limitations for bending, kneeling, squatting, lifting, carrying, overhead reaching, stair climbing, and prolonged walking, sitting, and standing. Tr. 657. State agency reviewers Dr. Baronos and Dr. Lawrence both found that Plaintiff could perform light work with additional limitations in his ability to stoop and climb. Tr. 78-79, 89-92. Notably, both consultative examinations and the state agency consultants' review of the evidence were conducted after Plaintiff's second surgery in May 2019. Tr. 79, 91-92, 646, 655. And although Dr. Ward's opinion was drafted in October 2018, after Plaintiff's second motor vehicle accident in June 2018 and before his May 2019 lumbar spine surgery, he likewise opined that Plaintiff had only moderate limitations. Tr. 1443.

The ALJ also reasonably determined that Plaintiff's subjective complaints were not consistent with the objective, clinical, and longitudinal treatment evidence of record. Tr. 19. Physical examination findings frequently showed that, despite some limitations in range of motion in his back and shoulders, tenderness in his back, and inconsistent results on straight leg raising test, Plaintiff retained 5/5 muscle strength throughout with no muscle atrophy; his gait and stance were normal; his sensation and reflexes were intact; and he had had full range of motion in his other extremities. Tr. 509-10, 514-15, 519-20, 524-25, 528-29, 532-33, 536-37, 540-41, 567-68, 647-48, 656-57, 660, 665-66, 1000.

Moreover, Dr. Ward's chiropractic treatment notes often show that Plaintiff's back pain was improving with treatment. Tr. 337-42, 345-46, 354-82, 397-414, 417-442, 487-99. Plaintiff also reported to Dr. Fishkin that he was "pleased" with the results of his surgery and that any lingering pain was "not bad." Tr. 998. *See Ecklund v. Comm'r of Soc. Sec.*, 349 F.Supp.3d 235, 248 (W.D.N.Y. 2018) (substantial evidence supported ALJ's evaluation of subjective complaints where, *inter alia*, ALJ recognized claimant's difficulties using his upper extremities and multiple surgeries, medical evidence showed claimant's condition was improving, and medical sources opined claimant had minimal to no restrictions for walking, standing, sitting long periods, bending, stair climbing, lifting, and carrying); *see also Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("a remediable impairment is not disabling.").

As the ALJ noted, the treatment records documented numerous reports of improvement and/or symptom relief from Plaintiff's various treatment modalities. Tr. 19, 337, 339-42, 346, 355, 357, 362-62, 364-82, 397-409, 411-14, 417-42, 666, 698, 1001. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (a condition is not severe if the impairment improves from treatment). Specifically, Dr. Fishkin reported that, after his 2015 surgery, Plaintiff was able to return to work

with minimal limitations until the 2018 motor vehicle accident. Tr. 677-78. Furthermore, after his second surgery, Plaintiff reported that his pain was "not bad." Tr. 998. Likewise, in July 2019, Dr. Fishkin observed that Plaintiff "continues to recover well from the surgery" from his second surgery. Tr. 1001. Thus, the ALJ's assessment of improvement is supported by the treatment records and the medical opinion evidence.

Finally, the ALJ properly considered Plaintiff's daily activities. Tr. 19, 21. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing*, 2018 WL 6060484, at *5. Here, the ALJ noted that Plaintiff's activities included the ability to care for himself, prepare meals, clean, do laundry, and go shopping. Tr. 19, 647, 656. Plaintiff also indicated that he read, watched television, cared for his daughter, walked daily, drove, and took public transportation. Tr. 230-34, 647, 656. *See Lewis v. Colvin*, 548 F. App'x 675, 677 (2d Cir. 2013) (ALJ's RFC finding supported by substantial evidence including activities of daily living); *Wolfe v. Comm'r of Soc. Sec.*, 272 F. App'x 21, 22 (2d Cir. 2008) (summary order) (ALJ properly discounted claimant's allegations regarding her symptomatology based on her statements that she attended church, shopped, and attended weekly football games); *Donnelly v. Barnhart*, 105 F. App'x 306, 308 (2d Cir. 2004) (summary order) (ALJ properly discounted allegations regarding symptomatology based on statements that claimant cooked dinner, folded clothes, and sewed); *see also Poupore*, 556 F.3d at 306 (ALJ may reject Plaintiff's subjective allegations in light of inconsistent evidence of daily functional ability, which in Poupore's case, included childcare). The ALJ reasonably found that these activities, as well as the rest of the foregoing evidence, indicated that Plaintiff's impairments were less limited than he had alleged. *See* Tr. 19, 21.

As previously noted, it is Plaintiff who ultimately bears the burden of demonstrating functional limitations that preclude performance of any substantial gainful activity. *See* 20 C.F.R. § 416.945(a)(3) (the claimant is responsible for providing the evidence used in the RFC determination); *see Poupore*, 566 F.3d at 305-06 (The burden is on Plaintiff to show that he cannot perform the RFC as found by the ALJ.). Plaintiff here failed to meet his burden of proving that no reasonable factfinder could have reached the ALJ's findings on this record.

Based on the foregoing, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is **GRANTED**. Plaintiff's

Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE